Citation Nr: 1641947 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 12-34 387 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to service connection for tonsil cancer with extension to the tongue base.

2. Entitlement to a compensable initial disability rating for bilateral hearing loss. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife



ATTORNEY FOR THE BOARD

Patricia Veresink, Counsel


INTRODUCTION

The Veteran had active duty service from December 1964 to December 1968, to include service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2010 and August 2013 rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO). The Veteran testified at a videoconference hearing before the Board in June 2015. 

The Board remanded the issues on the cover page, and the issue of service connection for left ear hearing loss, for further development in September 2015. In a subsequent December 2015 rating decision, service connection for left ear hearing loss was granted and the Veteran was assigned an initial disability rating of 0 percent for bilateral hearing loss. The case has been returned to the Board for appellate review. 


FINDINGS OF FACT

1. The Veteran served in the Republic of Vietnam and is presumed to have been exposed to herbicides, including Agent Orange. 

2. The preponderance of the probative evidence shows that the Veteran's cancer of the tonsils with extension to tongue base (hereinafter tonsil cancer) did not manifest during service or within one year of separation from service, and is not causally related to service, to include exposure to herbicides.

3. Throughout the appeal, the Veteran's hearing loss was manifested by no worse than Level IV hearing loss on the right and Level II hearing loss on the left, with speech discrimination scores of 82 percent on the right and 88 percent on the left. 


CONCLUSIONS OF LAW

1. The criteria for service connection for tonsil cancer with extension to tongue base have not been met. 38 U.S.C.A. §§ 1110, 1112, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

2. The criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. VA's duty to notify was satisfied by letters in May 2010 and July 2013. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

In addition, the Board finds that the duty to assist a claimant has been satisfied. The Veteran's service treatment records are on file, as are various post-service medical records. VA examinations have been conducted and opinions obtained. The Veteran was afforded a hearing before the Board and a copy of the transcript is of record. There is no allegation that the hearing provided to the Veteran was deficient in any way and further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

The Board also notes that actions requested in the prior remand have been undertaken. Indeed, a VA examination was provided and medical opinions were obtained. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Service Connection 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir.2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and malignant tumors become manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran essentially contends that he developed tonsil cancer as a result of exposure to herbicides during service in the Republic of Vietnam.

As an initial matter, the Board notes that the Veteran has been diagnosed during the course of the appeal with tonsil cancer with extension to the base of the tongue. Accordingly, the first criterion for establishing service connection has been met. The question becomes whether this condition is related to service.

Under 38 U.S.C.A. § 1116(a)(2) and 38 C.F.R. § 3.309(e), as to veterans who served in Vietnam during a certain time period, selected diseases may be presumed to have resulted from exposure to herbicide agents such as Agent Orange. According to the Veteran's service records, he served in the Republic of Vietnam during the Vietnam Era; therefore, his exposure to toxic herbicides is presumed. See 38 U.S.C.A. §§ 1116, 1154.

Regulations provide, in pertinent part, that if a veteran was exposed to an herbicide agent (such as Agent Orange) during active military, naval, or air service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. Tongue and tonsil cancer are not included among the list. See 38 C.F.R. § 3.309(e).

The Board notes that in accordance with section 3 of the Agent Orange Act of 1991, Pub. L. 102-4 , 105 Stat. 11, the Secretary has entered into an agreement with the National Academy of Sciences (NAS) to review and summarize the scientific evidence concerning the association between exposure to herbicides used in support of military operations in the Republic of Vietnam during the Vietnam Era and each disease suspected to be associated with such exposure. As required by the statute and agreement, the NAS submits a report to the Secretary every two years regarding the results of their review and summarization of the medical literature. The NAS, in Update 2012, found inadequate or insufficient evidence to determine whether an association exists between herbicide exposure and cancers of the oral cavity (including lips and tongue), pharynx (including tonsils), and esophageal cancer. 79 Fed. Reg. 20308-01 (Apr. 11, 2012).

The Secretary of Veterans Affairs has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. Id. Accordingly, the presumption of service connection due to herbicide exposure is not warranted for the Veteran's tonsil and tongue cancer. 

Although the Veteran's cancer is not presumed to be related to herbicide exposure, the Board must still consider whether the evidence indicates that the Veteran's disability is causally related to service.

Service treatment records show one complaint of strep throat in February 1965. The remainder of the Veteran's service treatment records is silent for any complaint, treatment, or diagnosis of cancer of the tonsils and tongue. The December 1968 separation examination showed a clinically normal mouth and throat. 

The first treatment for cancer following service was in November 2009, over forty years after separation from service and well outside the one year presumptive period for chronic diseases under 38 C.F.R. § 3.309(a).

As there is no competent evidence of squamous cell carcinoma, specifically cancer of the tonsils, tongue, or throat in service or within one year following discharge from service, competent evidence linking the current condition with service is required to establish service connection. 

In June 2015 the Veteran testified at a hearing before the Board. He reported that he drank water contaminated with herbicides during service. He also reported his diagnosis of strep throat during service that was treated with antibiotics. 

In October 2015, a private examiner noted that the Veteran's cancer was as likely as not caused by Agent Orange exposure in Vietnam. The examiner provided no rationale or explanation for his opinion. Accordingly, the opinion is afforded no probative weight. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions.").

In November 2015, a private examiner noted that the Veteran was diagnosed with squamous cell carcinoma of the base of the tongue and received chemoradiation to treat his cancer. In addressing the question of whether herbicides caused his cancer, the examiner noted that two common risk factors associated with head and neck cancers are tobacco and alcohol use, but exposure from occupational or environmental toxins such as asbestos, formaldehyde, and herbicides such as Agent Orange have been linked to developing cancer. He noted the Veteran was exposed to Agent Orange while in the military and that Agent Orange exposure could have certainly contributed to the development of the Veteran's cancer, but is not the only contributing factor.

The Board finds that the use of the phrase "could have certainly contributed to" is so tentative, by its own terms, so as to be of very little probative value. The Court has previously held that an opinion that is unsupported and unexplained is purely speculative and does not provide the degree of certainty required for medical nexus evidence. See Bloom v. West, 12 Vet. App. 185, 187 (1999); see also McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006) (finding doctor's opinion that "it is possible" and "it is within the realm of medical possibility" too speculative to establish medical nexus); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992) (medical opinion framed in terms of "may or may not" is speculative and insufficient to support an award of service connection for the cause of death).

Finally, the Veteran was afforded a VA examination in November 2015. The examiner diagnosed tonsil cancer with a date of diagnosis of November 2009. The examiner noted the Veteran's documented history of tobacco and significant alcohol use. He had copies of letters from his private treatment doctor noting that the exposure to Agent Orange caused his tonsil cancer; however, review of literature showed risk factors for tonsil cancer as tobacco or alcohol use and human papillomavirus. The examiner opined that the Veteran's cancer was less likely than not incurred in or caused by service. The Veteran has two established and widely accepted known risk factors for the development of tonsil cancer, to include tobacco and significant alcohol use. In review of an article on "Up to Date" on tonsil cancer, herbicide exposure was not listed as a risk factor. On "Medline," a search for Agent Orange as a risk factor or cause of tonsil cancer came up with no citations. An Institute of Medicine study of Veterans and Agent Orange in 2012 showed weak evidence supporting an association of lung or tracheal cancer and Agent Orange. In other words, the benefit of the doubt has been greatly extended for these cancers to be considered as presumptive. It also found inadequate or insufficient evidence to determine an association between Agent Orange and other cancers. The examiner noted that it is well known among epidemiologists that "association" is not synonymous with "causation," especially in epidemiological studies as there is poor control for confounders. Thus, the preponderance of the evidence supports that his tonsil cancer is less likely than not caused by Agent Orange exposure. The examiner additionally noted that a remote history of strep throat is definitely not a risk factor for the development of tonsil cancer. The examiner cited multiple journal articles in support of her opinions.

This opinion was provided following examination of the Veteran and review of the claims file. It included consideration of the Veteran's specific risk factors and cited to medical treatise information when providing a detailed rationale for the conclusion reached. Accordingly, it is entitled to great probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion).

While the Veteran believes that his current cancer of the tonsils and tongue is related to service, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In this regard, the diagnosis and etiology of cancer of the tonsils and tongue are matters not capable of lay observation, and require medical expertise to determine. Accordingly, his opinion as to the diagnosis or etiology of his cancer of the tonsils and tongue is not competent medical evidence. Moreover, whether the Veteran's exposure to herbicides during service is in any way related to his current disability is also a matter that requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). Thus, the Veteran's own opinion regarding the etiology of his current cancer of the tonsils and tongue is not competent medical evidence. The Board finds the opinion of the November 2015 VA examiner to be significantly more probative than the Veteran's lay assertions or the unsupported and/or speculative rationale opinions of the private physicians.

Upon review of the record, the Board finds that the preponderance of the evidence is against the claim of service connection for the Veteran's tonsil/tongue cancer. As the preponderance of the evidence is against the claim for service connection for cancer of the tonsils and tongue, the benefit of the doubt rule does not apply. 38 C.F.R. § 5107; 38 C.F.R. § 3.102.

Higher Initial Rating

The Board notes that during the course of this appeal, the Veteran was granted service connection for left ear hearing loss. Therefore, the issue before the Board has been changed from entitlement to a compensable disability rating for right ear hearing loss to entitlement to a compensable disability rating for bilateral hearing loss, as hearing loss for both ears is rated as a single disability.

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating many accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a questions as to which of two evaluations apply, assigning a higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects 
of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In evaluating service-connected hearing loss, disability evaluations are derived from a mechanical application of the rating schedule to numeric designations assigned after audiometric evaluations are performed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). 

Evaluations of bilateral defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 Hertz. To evaluate the degree of disability from bilateral service-connected defective hearing, the Rating Schedule establishes 11 auditory acuity levels designated from Level I for essentially normal hearing acuity through Level XI for profound deafness. 38 C.F.R. §§ 4.85, 4.86.

Audiological examinations used to measure impairment must be conducted by a state-licensed audiologist and must include both a controlled speech discrimination test (Maryland CNC) and pure tone audiometric tests. 38 C.F.R. § 4.85(a). 

Under 38 C.F.R. § 4.86, when the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Level designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. 38 C.F.R. § 4.86(a). Further, when the puretone threshold is 30 decibels at 1000 Hertz and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Level designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Level. 38 C.F.R. § 4.86(b). Each ear is considered separately. 38 C.F.R. § 4.86.

The Veteran was afforded a private audiogram in March 2009. At that time, the Veteran's pure tone thresholds, in decibels, were reported in graph form only, but appear to be as follows: 



 HERTZ


1000
2000
3000
4000
Average
RIGHT
20
45
55
60
45
LEFT
15
15
50
40
30

Speech recognition scores using a CID W22 word list were 96 percent in the right ear and 100 percent in the left ear. As the Maryland CNC word list is required by the rating regulations, those speech recognition scores cannot be utilized for evaluating the Veteran's hearing loss. Considering the private audiogram results for the sake of argument, application of these findings to Table VI results in Level I hearing loss bilaterally, which equates to a noncompensable rating under Table VII. 38 C.F.R. § 4.85.

The Veteran was afforded a VA examination in June 2013. At that time, the Veteran's pure tone thresholds, in decibels, were as follows: 




 HERTZ


1000
2000
3000
4000
Average
RIGHT
25
60
60
65
52.5
LEFT
20
25
60
55
40

Speech recognition scores were 82 percent in the right ear and 88 percent in the left ear. Application of these findings to Table VI results in Level IV hearing loss in the right ear and Level II hearing loss in the left ear. Applying the assigned levels for each ear, the Veteran's hearing loss equates to a 0 percent rating under Table VII. 38 C.F.R. § 4.85.

The record contains no additional pure tone threshold findings during the period on appeal. Moreover, the VA examination included the Veteran's complaints regarding his hearing and the functional impairment it causes. In this regard, the June 2013 VA examiner reported the Veteran's complaints of difficulty understanding in background noise or in larger groups. Thus, the examinations are adequate for evaluating his disability. See Martinak v. Nicholson, 21 Vet. App. 447, 455-56 (2007). 

The Board sympathizes with the Veteran's complaints regarding the functional impact of his hearing loss on his daily life; however, the assignment of disability ratings for hearing impairment is derived from a mechanical formula based on levels of pure tone threshold average and speech discrimination. Thus, the medical evidence of record is more probative than lay contentions as to the extent of the Veteran's hearing loss. 

In sum, at no point during the initial period of service connection did the Veteran's hearing loss rise to a compensable level, and the most probative evidence does not reflect that a compensable rating is warranted at any time during the period on appeal. Accordingly, the Board finds that the criteria for a compensable initial disability rating for bilateral hearing loss have not been met or approximated. 38 C.F.R. § 4.85, Diagnostic Code 6100.

The Board has considered whether the Veteran's disability presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2015); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor is whether the disability picture presented in the record is adequately contemplated by the rating schedule. Thun v. Peake, 22 Vet. App. 111, 118 (2008). 

The Board is of the opinion that the rating schedule measures and contemplates each aspect of the Veteran's hearing loss disability. As explained in the proposed rule for the current version of Diagnostic Code 6100, the criteria of Diagnostic Code 6100 were revised in 1987 with the goal of recognizing the impact of hearing loss in higher frequencies, and to provide a more accurate picture of true hearing impairment. See 52 Fed. Reg. 17607 (May 11, 1987). As a result, VA changed its testing methods and, in conjunction with the Department of Medicine and Surgery, developed amendments to 38 C.F.R. §§ 4.85, 4.86a, 4.87a and Tables VI and VII. In particular, pure tone averaging was to be accomplished using tone bursts at 1000, 2000, 3000 and 4000 Hertz, and speech recognition was to be measured using the Maryland CNC word lists which contained words with sounds in the 3000 and 4000 Hertz range. 

Overall, the new schedule was intended to evaluate hearing loss based on a combination of pure tone averages and speech discrimination, which was thought to provide for a more accurate representation of actual hearing impairment by recognizing that individuals with slight to moderate decibel loss as determined by pure tone averaging may have significant impairment of speech and vice versa. Additionally, the rating schedule was revised to accommodate language difficulties and other factors which produced inconsistent speech audiometry scores and to recognize exceptional patterns of hearing impairment. Notably, VA determined that "Table VII was developed during months of consultations with our Department of Medicine and represents the best judgment of experts in this field." 

Based upon the stated factors and considerations undertaken by VA and medical experts in developing the current criteria of Diagnostic Code 6100, the Board finds that the schedular rating currently assigned reasonably describes the Veteran's disability level and symptomatology. The Veteran's description of difficulty hearing has been measured according to pure tone averages and speech discrimination. The Board recognizes that the Veteran stated that he has difficulty hearing in the presence of background noise or when in a larger group. However, as explained above, the rating criteria are designed to take into account testing that accurately measures difficulty hearing in an objective way and the Veteran's reports simply do not represent an exceptional case. 

As a final matter, the Court has held that entitlement to total disability based on individual unemployability (TDIU) may be an element of an appeal for a higher rating when raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). The 
evidence does not indicate, and the Veteran has not asserted, that his service-connected hearing loss prevents him from obtaining substantially gainful employment. The Veteran worked for the same employer from the 1970s through the 1990s, until retirement. Accordingly, the Board finds that a claim for TDIU has not been reasonably raised, and further action under Rice is not warranted.

In reaching the conclusions above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Entitlement to service connection for tonsil cancer with extension to the tongue base is denied.

Entitlement to a compensable initial disability rating for bilateral hearing loss is denied.



____________________________________________
K.A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs